And we'll move to our second argument of the morning. It's appeal number 22 2343 Candice Martin versus Goodrich Corporation and others Okay, is it Mr. Coughlin? Yep, whenever you're ready. Good morning, your honors and happy Valentine's Day. May it please the court. My name is Timothy Coughlin from Thompson Hine in Cleveland and along with my co-counsel Daniel McGrath from Hinshaw Culbertson. We are here today to represent appellants, Goodrich Corporation, and Aviant, formerly known as Poly 1. I would reserve three minutes for rebuttal, please. We're here today because this court has accepted for appeal the petition for the interlocutory appeal of two certified questions from the district court. Those two questions are whether 820 ILCS 310-1F, and if you don't mind I'll refer to it as 1F for the remainder of this, is a statute of repose. If it is not a statute of repose, appellee's claims fail as a matter of law under the 1.1 exception. If this court determines that it is a statute of repose, the second question certified by the district court is whether 310-1.1, the 1.1 exception, to allow a civil action to proceed in the face of appellant's substantive due process. Now, with regards to the facts of this case, they're actually rather simple as to the application of the law here, is that Mr. Martin began as an employee in 1966 at the Henry, Illinois facility for Goodrich. He worked there until the 80s, but the claim here is that in mid-1974 his exposure would have ceased. So the operative two-year issue here is mid-1976, Mr. Martin did not have a disease manifest itself from the claimed exposures that appellee is claiming. There is no doubt that this injury that they're claiming arose out of and in the course of his employment. Therefore, the law at that time became a bar forever to his claim. There is no applicable exception here to the exclusivity clause in the ODA. Appellee admits that. The other two operative facts would be there was a 2019 diagnosis of cancer and Mr. Martin passed in 2020. All of that means that for over 40 years, the appellants had a vested right to know that they would never, ever face a claim in any... Mr. Coughlin, there's a lot of ink spilled in the briefs about vested rights. Do we even need to address that question if your analysis under Landgraf and Perry is accurate? The question is whether that right accrued and when that right accrued. That is the statute on statutes analysis and express language that says, no new law shall be construed to repeal a former law, whether such former law is expressly appealed or not, as to affect any right accrued. That is the modified Landgraf test. Here, the rights accrued in 1976. Is that the same as vested though? Are you saying yes, we have to answer the vested question or no, we don't? You do, Your Honor, because vested and accrued are somewhat hand in hand, like these two statutes that we're talking about. That the right accrued under 1F and vested in mid-1976. That's when those rights to the appellants accrued. That's when they vested. Similarly, with regards to the exclusivity clause, that vested when he crossed the threshold of the plant. That's the grand bargain in Illinois between employees and employers. Employers are giving up certain rights and employees are giving up certain rights. That happens when you cross that threshold and become an employee. And so in 1976, mid-1976, the rights were certainly accrued and vested that appellants would never face such a claim. And what is absent from Appelee's brief is any discussion of the Perry decision. Any discussion of the statute on statutes and the language in that statute that has existed in Illinois since the 1800s, unchanged. So Mr. Kaufman, kind of following up on Judge St. Eve's question. So Perry says that with Illinois Supreme Court's adoption of Landgraf, we switched the focus of the first step of the retroactive analysis from vested rights to legislative intent. So what you're saying is that in the modified step two, when we look at the statute on statutes, that's where the vested rights kind of comes back into the analysis? And it does, Your Honor. If you look at Perry, Perry said that you cannot, they said the rights of the two institutions seeking documents vested before the statute. They actually use that language. So that what we're talking about is there is some muddled analysis. Does vested equal accrued? We would argue that it does. Because those rights come into existence based upon the statute. Is that the same test as under step two of Perry and Landgraf? Because the Illinois law seems clear that you rarely get to step two, given the statute on statutes, unless there's something expressed otherwise. You do not get to a Landgraf step two. I would agree with that. Under Perry and a number of Illinois cases, the second step when there is no temporal or temporal limitation in the statute is to go to the statute on statutes. And so it's just clear statutory construction that the district court missed, and we asked this court to enforce. So Mr. Coughlin, if you did that, I'm confused about this. If you looked at, and I know your adversary is going to disagree, and I'm just asking it for argument purposes. If you look at the May 2019 amended amendment, what everyone's calling exception 1.1, right? Yes. And you say there's no clear statement that it applies retroactively. Correct. Therefore, under section four of the Illinois statute on statutes, the presumption that it controls is that it applies prospectively only. Correct. Okay. Why couldn't the court go through that analysis, say there's no clear statement, and just stop? Why do you need to go any further? Because you have to look at what the statute on statutes actually says and what does prospectively forward mean? Because the case law is clear, even from the Southern District of Illinois in Locke v. Board of Education, that the statute on statutes forbids a retroactive application of a substantive change in a statute, which is what we have here. And that's why when your rights have accrued, section four says you can apply the statute prospectively so long as you are not taking away an accrued right. You have to start at that. So here, if we look at this, if you had an employee that came into a plant in 2020, was exposed, contracted cancer beyond the three years, the statute would apply because the employers know at that point their right doesn't vest. That statute of repose, if it is one, we would argue 6C is the statute of repose in the ODA. Eppley's argument is you end up with two statutes of repose. That seems illogical. So with regards to this case, you end up with an enforceable statute when employers can do things like insure against the possibility, take different conduct with regard to the possibility. Can you go to 1F for a second? Here's what I don't understand at all. How is, let me ask you, let me just start this way. When you argue that it imposes a condition precedent, are you using that term as a term of art? Or are you saying condition precedent like we would think of a condition precedent in contract law? And the reason I'm asking you that is because I've read 1F probably 10 times. And if somebody said, describe to me what 1F is doing, the words condition precedent would never enter my mind. That's why I'm asking you the question. As the Docksteiner court in Plasters found it to be a condition precedent. But how do you articulate that? Like, what does that mean? So you end up with 1F and 6C have to be read together. And therefore, you have a two-year limitation from the last day of last exposure that the condition must come to fruition. Then you have under 6C, the employee would have three years within, depending on what the substance was, three years to bring a claim under the ODA. So it's a two-step process. No, I get that. But is that like saying all statutes of limitations are, quote, conditions precedent, unquote, because you have to satisfy them before you can bring a lawsuit? I mean, just help me use the word condition precedent to make any sense out of that language. The condition, because there is a statute of repose in 6C, and again, in Fulta, the Illinois Supreme Court described 1F as a mere temporal limitation. Forget the Illinois case law. It hasn't helped me a bit. Then you end up with a process where that disease must come to fruition within the two years. That is the condition precedent to be able then to file a claim under 6C. If you don't meet the condition precedent, which Doc Steiner analyzed, then you can't file that 6C claim and be subject to the three-year limitation in 6C. Well, that's an odd use of English language, to look at something like that and say, just go back to your 1L contracts law course and call that a condition precedent. That's odd. It matters because it matters on who bears the burden of proof. If it's a condition precedent, then presumably the plaintiff would have to bear the burden of proof. But if it's some sort of exception or exclusion, there is an argument that could be made that actually it's the defendant's burden of proof. So the language is not just intellectual belly-button gazing. The language actually does really matter in the end because it has substantive impact on who needs to show what at trial. Here, it is the claimant's burden of proof to demonstrate that the disease arose within two years of the last day of last exposure. They have the burden throughout if it's a condition precedent. And just to add to the confusion on condition precedent, the Illinois cases have often emphasized something that is a condition precedent is jurisdictional in nature. But the Illinois Supreme Court did away with some of that in the Belleville-Toyota case. So I'm not sure where that leaves us. It leaves us with a statute that is clear on its face that it bars the claim. And if it is not a statute of repose, then the 1.1 exception does not apply. If it is this panel's decision, it is a statute of repose, then PERI and the rest of Illinois law and the statute on statutes preclude the taking away of a 40-year vested rights in the defenses of the appellants. Do we have to decide the 1F question if we go straight to a PERI analysis? Because of the express language of 1.1, you don't reach a PERI analysis unless you have a statute of repose. Okay, we'll give you some rebuttal time. Yeah, sure.  Good morning, Your Honor. Andrew Lipton with Patrick Domenico for the appellee. I'm not used to being an appellee. I think the confusion over Section 1F highlights why this case is right for certification to the Illinois Supreme Court. I happen to believe that Section 1F, as worded, meets the definition of a repose provision. It extinguishes any potential claim or any right to liability, even before an injury occurs. And that definition appears in the FOLTA case. Yeah, now see, that line of argument is very intuitively attractive to me. But that's why I'm asking, I mean, what's fair for Mr. Copeland is fair for you. Is condition precedent just some kind of term of art in Illinois law that you'd say, forget whatever you learned in contract law. This is just a term of art in Illinois, and here's what it means. I don't think so. I think it was, in the Goodson case, a throw-out language because you're saying you've got to pass the statute of repose or not be barred by the statute of repose before you can bring a claim. So they're saying it's a condition precedent. I don't think it was a term of art because in the Dickerson case. That just means you have to comply with it. That's right. Does it matter that 1F focuses on remedies and compensation as opposed to claims? Because the statute of repose talks about claims and accrual of claims and when it's too late to bring a claim. But 1F focuses on remedy. Well, it's really what it's saying is that the disablement must occur within two years of the last exposure. And under the Occupational Disease Act, your claim arises only upon disablement. So you don't have an ODA claim unless you're disabled. So a repose provision that cuts off your ability to bring a claim before you're disabled functions as a repose provision. But it talks about no compensation. It doesn't say your claim is cut off. 1F says no compensation shall be payable upon these events. The cases that have looked at that issue in the context of 1F and the ODA are talking about compensation benefits. So it's your claim for benefits under the Occupational Disease Act. And it's limited to that. It seems like it's the benefits from your claim, not the claim itself. Well, you can't even bring the claim if you're barred by 1F. Yeah. I think what Judge Steney was saying, I mean, by its terms, it's a limitation on a remedy. Right? Because of the way it starts, no compensation shall be payable, ellipses. Right. So you could not bring an ODA claim. You could not seek compensation. Oh, sure, because it would be futile to bring a claim if your compensation is going to be zero. Correct. There would be no sense in that. And that's why I believe that work functions as a repose provision. But doesn't that— And it's before the injury even occurs. But, Mr. Lipton, doesn't that basically weed out Section 6C? I mean, can you name another Illinois statute that has more than one, like two statutes of repose like you propose here? I think they serve different functions in terms of 1F focusing on disablement in a latent disease context. And 6C is not necessarily that. It's when after disablement you must begin to pursue your claim. So the two are different and can be read to work together. But 1F will always be more restrictive than 6C, wouldn't it? Yes. And that's why the FOLTA case is so important. Because what the FOLTA case did was looked at both 6C and 1F as two different temporal limitations on a latent disease claim. And then said, under those circumstances, is there a common law remedy? And the court then looked and said, no, the exclusive remedy provision comes into play, and there is no remedy. I'm sorry, go ahead. They then said, this is a harsh result. And they went to the legislature and said, you may strike a different balance, which is what they did in 1F. That was my question. I was exactly, you were kind of predicting where I was going to ask you, which is, so you have the FOLTA case where, and there the Supreme Court says, we have a statute of repose, Section 6. And then we have this other thing, 1F, which is what they call a temporal limitation, whatever that means. But they didn't call it statute of repose. And so then they said, the legislature can deal with this. It goes to the legislature, and the legislature does deal with it. And it only includes the language statute of repose. It doesn't say, oh, you know, the FOLTA court also talked about this other kind of limitation, and so we're going to apply the 1.1 exception to that as well. It just says, well, the FOLTA court talked about statute of repose, and that's what we're aiming at. Doesn't that kind of cut against your argument about how we should interpret or apply 1.1? But that's not the language of 1F, 1.1. Because what they talk about in 1.1 is whether there's a bar of a statute of repose or a repose provision. Now, if they were talking about 6C as the statute of repose, then the or repose provision language is superfluous. It's not. It's referring to something else, which is 1F, which is functioning as a repose provision, which is exactly what the Court of Appeals said in the Whitney case and the Dickerson cases. But the Supreme Court didn't characterize in FOLTA as a repose provision, right? They didn't say one way or the other. They didn't say it was not one either. And if you look at it, it meets the definition, I believe, that FOLTA lays out for what a statute of repose does. And as I said, there are two appellate courts who have specifically said that 1F is a repose provision. The other point that I want to make where I want to disagree with appellant— Before you go there, Mr. Lipton, can you please address the Perry argument? You did not address that in your brief, that this is not retroactive under the Landgraf-Perry analysis. That's exactly where I was going right now. Under Illinois law, the law in effect under workers' comp and the ODA, the law in effect at the time of injury is the law that applies. That has been the law in Illinois since 1931. I cited the Millis case and the Owens-Corning fiberglass case in my brief. There's also an A.O. Smith case. The Owens-Corning case is interesting because there, the question was, do we apply the law in effect at the time of last exposure for an ODA claim, or do we apply the law in effect at the time of disability or death? And they said under Illinois law, you apply it at the latter time. So the claim doesn't arise, the cause of action doesn't accrue until there's a disability or death. There's no retroactive application to an amended statute where it's applied to a cause of action that accrues after the amendment takes effect. That's not retroactivity. But isn't that a bit in tension with your argument that 1F functions as a statute of repose that eliminated your claim? I mean, the 1.1 exception says, okay, if a statute of repose eliminated your claim, right, then we're going to let you file it. And here you're saying that your claim didn't arise until after the enactment of 1.1. I think this is a confusion of what 1F does. 1F cuts off my ability to file an ODA claim for compensation benefits for disablement or death. That's all it does. It doesn't cut off common law claims. There's nothing, no court has ever said that. So 1F cuts off my right to get disability benefits, or in this case, death benefits. So no compensation there, you're saying you have to read as no compensation is a reference not to tort compensation. Correct. It's a reference to compensation, which are the benefits available under the statute. And, in fact, the Dickerson case specifically says, and I think there's language in Fulta that also talks about the focus is on there as cutting off the ability to pursue benefits under the act. As an example, if you look at Fulta, they recognize the claim is cut off by 1F, whether it's proposed or whatever. They then went on to conduct an analysis as to whether the exclusive remedy defense applied to cut off the right to tort benefits. If 1F applied to all compensation, both I'll call it administrative and tort, Fulta never would have occurred. There would have been no reason for that entire analysis. That analysis happens only because 1F and 6C only cut off benefits under the Occupational Disease Act and leave open the question of tort benefits, which then brings you to the question of the exclusive remedy provision. Now, defendant or appellant is arguing that the right to exclusive remedy defense vested or accrued at the time Mr. Martin was hired or at the latest in 1976. That's not the law in Illinois. The ODA law is that you look at the law at the time of disability or death, not at the time of last exposure. In addition, you've got the Commonwealth Edison case and the Heinrich case, which both held that a defense, and I'm going to distinguish it from a statute of opposed defense, the defense accrues or vests at the time the cause of action accrues. And the cause of action accrued only after the time of injury. If you look at the Doe case, all of the statute of limitation cases, statute of limitations can be amended. It's not limited to the time that the conduct occurred. The statute of limitations can be amended throughout the time until it fully runs, so it doesn't vest until the full statute runs. The law, I think, everywhere has been pretty clear that retroactivity, even under section four of the statute of statute, is talking about applying something to a cause of action that has already arisen. That's not the case here. This cause of action did not arise until Mr. Martin was disabled, and in fact, it's now a death case, so until he died. So there could not have been any accrued right to the exclusive remedy defense. The other way to look at it is even in FOLTA again, when they were looking at exclusive remedy, they said that there are four exceptions to it, and you can't apply those exceptions or know if any of them apply until the injury has occurred. So all of this is consistent that the law can be changed and can apply to a cause of action that accrues after the amendment takes effect. Switching perspectives, what about the rights that the defendants would have? So in other words, under 1.1F, they would have the right two years after the last exposure to say, okay, to cut off the claim, to be confident that no claims would be brought. Absolutely. And so then 1.1 comes in and says, okay, well, we're going to basically take, in their perspective, we're going to take away that right. So focusing not necessarily on whether the claim accrued, but when the right to that defense accrued. And didn't that right to defense accrue two years after? The 1F defense did accrue. We are not suggesting that they have lost the benefit of Section 1F. The claim for compensation benefits under the ODA is barred. Forever barred after 1976. They haven't lost that. They're not depending essentially on 1F. They have to depend upon the exclusive remedy defense. And that's why they try to argue that it accrued or vested upon hiring or upon the time of 1976, two years under 1F. But that's not the law. And if you're going to look at Illinois law, it says that you apply the law in effect at the time of disability or death. Again, this is why this issue should be certified to the Illinois Supreme Court. We're all going back to all of these issues, to interpretation and application of Illinois state statutes. Do you apply Section 4 of the statute of frauds, for example, of statute on statutes? Do you apply it to a cause of action that hasn't yet arisen, that arises after the amendment? That's what they want to do. No case has ever said that. Yeah, and the clarification between tort law and administrative benefits recovery under the ODA is important here, too. Very important. Yes. All right. Thank you very much. Okay, very well. I'm not sure how much time I have. We'll give you a minute. The certification to the Illinois Supreme Court aptly never even addressed what the standard is as to whether there's general uncertainty. Here, it's a matter of statutory interpretation, which this court has said it is well positioned to do. There's a lot of intersecting statutes here, though. I mean, you all would have to admit that. I mean, there is a lot of Illinois law on the table, and how it interrelates is complicated. As most cases are complicated, Your Honor. And that's why this court is entrusted with complicated matters. And it's clear that you have that the Perry Section 4, that's clear. And what Apley keeps arguing is Apley's rights. Look at my cause of action. It didn't accrue. That's not what Section 4 says. Section 4 also talks about the accrual of rights of the other party, the defendant. You can't take— How do you respond to his point, though, that, yeah, that's fine, but 1F is only dealing with administrative benefits? You have to read the two statutes together. The Exclusive Remedy Statute, which once that two years passed, the Exclusive Remedy Statute told the appellants they would never face any claim of any kind in any forum. This argument that it doesn't come up until his claim accrues, that's not true. Those rights of the defendants vested when they vested. Apley's claim might have accrued in 2000, but the appellant's rights vested in the mid-'70s at the latest. Now, with regard to this, oh, Illinois law says you apply the law at the time. Well, if you go with that umbrella, then the Illinois legislature could strike out a 6C statute of repose. And then they'd be here arguing, well, between the time it vested and the time the claim accrued, well, you look at the law now. You can't take away vested rights. The courts in Illinois and the federal courts have been telling the Illinois legislature this for over 100 years, and they keep doing the same thing. Okay. Mr. Coughlin, thanks to you. Mr. Lipton, thanks to you. We appreciate the advocacy. We'll take the appeal under advisement.